VAN ANTWERP et al. v. STATE. (No. 261/84.)

(Supreme Court, Appellate Division, Third Department. November 10, 1915.)

1. TAXATION ⬅⬊543—RECOVERY OF ILLEGAL TAX—ACTION—PARTY PLAINTIFF —STATUTE.

A stock brokerage house sued, under Laws 1910, c. 186, a special refunding act, to recover from the state taxes on sales of stock illegally exacted, including stamps used by the firm for customers who were not indebted to it; the stamps having been charged to the customers, accounts rendered upon which the charge was made, and the charge assented to by the customers. The state objected that the plaintiff had no right to collect such claims under the act, which provided that the comptroller might make the refund upon proof that the stamps were "erroneously affixed, so as to cause loss to the person or persons making such claim," contending that the loss was a loss to the customer, and not to the broker, and that the customer alone might make claim therefor. Held, that the plaintiff could maintain its suit; it having been "aggrieved" by being obliged to pay the tax to the state by its liability to penalty if it had not paid, by its liability to customers for an erroneous payment, and by its being forced to run the chance of paying the tax and of being sued by its customers for failing to pay the tax and incurring the penalty therefor.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1006–1016; Dec. Dig. ⬅⬊543.]

2. TAXATION ⬅⬊543—RECOVERY OF ILLEGAL TAX—PARTY BENEFITED.

Where a stock brokerage house sued the state, under Laws 1910, c. 186, a special refunding act, to recover stamp taxes on sales of stock illegally exacted, the amount of the tax having been charged to customers and assented to by them, any recovery by the house would be for the benefit of the customers.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1006–1016; Dec. Dig. ⬅⬊543.]

Howard, J., dissenting.

Appeal from Board of Claims.

Claim by William C. Van Antwerp and others, composing the firm of Van Antwerp, Bishop & Co., under Laws 1910, c. 186, a special refunding act, against the State. From the allowance of two classes of claims and the disallowance of another, the State and claimants appeal. Judgment reversed so far as appealed from by claimants, and affirmed so far as appealed from by the State.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Goldman, Heide & Unger, of New York City (Alton B. Parker, of New York City, of counsel), for appellants.

Egburt E. Woodbury, Atty. Gen., and Wilber W. Chambers, Deputy Atty. Gen., for the State.

SMITH, P. J. [1] The Tax Law as it existed in 1905 provided for a tax of 2 cents on each $100 of face value, or fraction thereof, of sales of shares of stock. In 1906 the law was amended so as to levy the tax upon each *share* of $100 of face value, or fraction thereof. This amendment was held unconstitutional in People ex rel. Farrington v. Mensching, 187 N. Y. 8, 79 N. E. 884, 10 L. R. A. (N. S.) 625, 10 Ann. Cas. 101. Thereafter the brokers who had affixed the tax which had been illegally demanded made claim for a refund of the same. This claim was denied by the Court of Claims, upon the ground that the court had no jurisdiction. To remedy this defect a special refunding act was passed, to wit, chapter 186 of the Laws of 1910, and under this special refunding act the claimants now before the court have brought this case.

The plaintiff's claim may be divided into three classes: First, the excess stamps used on sales by the firm for the firm, or for a member or members of the firm. This claim was allowed by the Court of Claims, and of such allowance the state makes no complaint. The second class included stamps used on sales by the firm for customers who were indebted to the firm. These claims were allowed by the Board of Claims, and of such allowance the state complains by its appeal here taken. The third class includes stamps used on sales by the firm for customers who were not indebted to the firm; that is, where the stamp had been charged to the customer and accounts rendered upon which the charge was made, and such charge assented to by the customer. This class of claims was not allowed, and for the failure to make such allowance the claimants have appealed.

The state does not question the amounts in these various classes, nor does it question its liability to refund the same. It challenges, however, the rights of these brokers to collect the same under the terms of the refunding act. That act provides that the comptroller may make the refund upon proof that the stamps were "erroneously affixed, so as to cause loss to the person or persons making such claims." The contention of the state is that the loss is a loss to the customer, and not to the broker, and that the customer alone can make claim under the refunding act.

In People ex rel. American Exchange National Bank v. Purdy, 196 N. Y. 270, 89 N. E. 838, the bank sought to recover for its stockholders taxes illegally collected upon their stock. Twenty-three stockholders of the bank had instituted similar proceedings in their own behalf, which proceedings were pending. The bank brought the proceedings under section 250 of the Tax Law of 1896 (Laws 1896, c. 908), being section 290 of the present Tax Law (Consol. Laws, c. 60), which provided that the claim should be made by the person "aggrieved" and "injured." The Court of Appeals held that the proceeding was properly brought by the bank, on the ground that the bank was aggrieved and injured by the assessment. Judge Vann, in considering the question whether the bank had a right to institute a proceeding in its own name, or whether the stockholders should have brought separate actions in their own name, says:

"Several preliminary questions should be considered before the main controversy is passed upon.

"1. Had the relator the right to institute this proceeding in its own name, or should it have been commenced by some shareholder claiming to be aggrieved? We do not regard this question as open. Matter of National Bank of Ossining, 182 N. Y. 460, 462 [75 N. E. 306]. In the case cited the proceeding was commenced by the bank alone, no shareholders having joined therein, and it was contended, both at Special Term and in this court, that the relator was not injured by the assessments because they were not made against it or its property but against the shareholders upon their shares of stock. Judge Gray, speaking for the judges, answered this contention as follows: 'That the bank was aggrieved, within the meaning of section 250 of the Tax Law, and therefore was entitled to sue out the writ of certiorari, is, in my opinion, beyond question. The Tax Law makes the bank the agent for the collection of the tax and subjects it to a penalty for failure to pay over the same to the county treasurer, or, in the city of New York, to the receiver of taxes.'"

Judge Vann further quoted from Judge Gray as follows:

"The representative capacity of a bank to maintain a suit in behalf of its stockholders, in relation to the assessment and taxation of its shares of stock, was sufficiently declared in the recent case of Mercantile National Bank v. Mayor, etc., of New York, 172 N. Y. 35, 45 [64 N. E. 756], and it can, undoubtedly, institute such a proceeding as this. Such was the procedure as far back as the case of People ex rel. Gallatin National Bank v. Commissioners of Taxes, 67 N. Y. 516."

This case was followed and approved in People ex rel. American Exchange National Bank v. Purdy, 199 N. Y. 51, 92 N. E. 232, and also in Second National Bank v. City of New York, 213 N. Y. 457, 462, 107 N. E. 1039.

In Mercantile National Bank v. Mayor, etc., of New York, 172 N. Y. 35, 64 N. E. 756, the bank brought an action in equity to restrain the city of New York from collecting a portion of the taxes imposed upon the bank's stockholders. The court held that the action was properly brought by the bank. Judge Gray wrote (172 N. Y. at page 44, 64 N. E. at page 759):

"That power [equitable power of the court] remains, as it always must remain, inherent in the court to be exercised in proper cases. That the plaintiff would have the right to invoke its exercise in behalf of its stockholders, I consider to be settled, upon reason, as upon authority. The provisions of

the Tax Law with respect to the collection of taxes assessed against stockholders of banks, in their. requirement of the bank to retain, and to pay, from any dividend the tax upon the stock, and the responsible relations thereby created, seem to warrant the maintenance of a suit by the banking corporation in its representative capacity. But its right to do so has been distinctly held by the Supreme Court of the United States, in Hills v. Exchange Bank, 105 U. S. 319 [26 L. Ed. 1052] and in Cummings v. National Bank, 101 U. S. 153 [25 L. Ed. 903], 2 Nat. Bank Cas., 74. In the latter case it was held, in language appropriate to the present plaintiff, that 'in paying the money it is acting in a fiduciary capacity as the agent of the stockholders, an agency created by the statute of the state. If it pays an unlawful tax assessed against its stockholders, they may resist the right of the bank to collect it from them. The bank, as a corporation, is not liable for the tax and occupies the position of a stakeholder, on whom the cost and trouble of the litigation should not fall. If it pays, it may be subjected to a separate suit by each shareholder. If it refuses, it must either withhold dividends, and subject itself to litigation by doing so, or refuse to obey the laws and subject itself to suit by the state.' "

In Bank v. Memphis, 116 Tenn. 641, 645, 94 S. W. 606, where a similar situation existed, the court used the very significant words, "The tax was the debt of the stockholders," "and not of the bank itself," but nevertheless held that the bank could sue and, that "its recovery would be for the benefit of its stockholders."

The position of the bank is similar to that of the claimants here in that:

(1) Both were obliged to pay the tax to the state.

(2) Both would have been penalized if they had not paid the tax.

(3) Both were liable to their respective shareholders and customers for making an erroneous payment; and

(4) Both had to run the chance of either paying the tax to the state and being sued by their respective shareholders and customers, or of failing to pay the tax and of incurring the penalties therefor.

[2] These cases, in my judgment, are decisive of the question here raised. It could not result in double recovery, because a recovery by the broker would be for the benefit of its customer. Dix v. Jaquay, 94 App. Div. 554, 88 N. Y. Supp. 228; Rogers v. Atlantic, Gulf & Pacific Co., 213 N. Y. 258, 107 N. E. 661; First Commercial Bank v. Valentine, 209 N. Y. 145, 150, 102 N. E. 544, Ann. Cas. 1913D, 1104; Matthews v. Smith's Express Co., 1 Misc. Rep. 238, 23 N. Y. Supp. 132.

I recommend that the judgment of the Court of Claims, so far as appealed from by claimant, be reversed on law and fact, with costs, and judgment directed for the claimant for the full amount claimed, with costs, with appropriate disapproval of the findings of fact made by the Board of Claims, and appropriate findings to sustain such judgment, which may be settled upon notice if not agreed upon. Judgment so far as appealed from by state affirmed. Judgment to be settled by SMITH, P. J.

Determination and judgment, so far as appealed from by claimant, reversed on law and facts, with costs, and judgment directed for the claimant for the full amount of the claim, with costs, with appropriate disapproval of the findings of fact made by the Board of Claims, and appropriate findings to sustain such judgment, which may be

settled upon notice, if not agreed upon. Determination and judgment, so far as appealed from by the state, affirmed. Judgment to be settled by LYON, J. All concur, except HOWARD, J., who dissents.